O. W. DARDEN, ADMINISTRATOR C. T. A. OF THE ESTATE OF J. C. DARDEN, DECEASED, v. L. E. BOYETTE AND M. F. SMITH, ADMINISTRATORS OF THE ESTATE OF RUBY DARDEN, DECEASED.

(Filed 30 October, 1957.)

1. **Trial § 21—**

   Where plaintiff has no right, title or interest in the chose in action so as to entitle him to maintain the action for its recovery, nonsuit is proper.

2. **Wills § 33f—**

   Where a will bequeaths and devises all of testator's property, real and personal, to testator's wife for life with full power of disposition, with further provision that any of the property not disposed of by the widow during her lifetime should go to testator's heirs at law *per stirpes,* the life estate devised in clear and express words will not be enlarged to a fee, and the limitation over after the life estate is effective.

3. **Executors and Administrators § 8: Descent and Distribution § 2½—**

   Upon the death of a person his personal property vests in his executor or administrator, and his real property vests in his devisees, or descends to his heirs.

4. **Executors and Administrators § 20—**

   Where the personal representative has paid decedent's debts, the costs of administration and all charges against the estate, the balance remaining in his hands shall be delivered and paid to the person or persons to whom the same may be due by law or the will. G.S. 28-162.

5. **Executors and Administrators § 26—**

   When an executrix closes the administration of the estate after paying all debts and charges against the estate, and distributes the balance of the personal property to herself as life tenant in accordance with the will, the delivery of the estate to herself as life tenant inures to the benefit of the remaindermen, and when the will creates no trust and imposes no duty upon anyone in regard to the remainder upon the termination of the life estate, such personal property ceases to be property of the estate or subject to any further administration as a part of the estate, and the personal representative becomes *functus officio* in regard thereto.

6. **Executors and Administrators § 9: Parties § 1—**

   Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute. G.S. 1-57.

7. **Executors and Administrators § 10—**

   An administrator *c.t.a.* has no greater rights and powers and is not

subject to greater duties than the executor named in the will. G.S. 28-24.

8.  **Executors and Administrators § 9—Where remainder in personality vests by operation of law upon death of life tenant, testator's personal representative may not maintain action therefor against administrator of life tenant.**
    The will bequeathed the personalty in question to testator's wife for life, with power of disposition, and directed that the property not disposed of during her lifetime should go to his heirs. The widow as executrix settled the estate and paid the remaining personalty to herself in accordance with the will. Thereafter she died and her husband's administrator *c.t.a.* brought this action against her administrators to recover the personalty for the remaindermen under the husband's will. The will set up no trust and imposed no duty upon anyone in regard to the remainder. *Held:* The executrix was *functus officio* in regard to such personalty and therefore the administrator *c.t.a.* was also *functus officio* in regard thereto, and therefore G.S. 1-63 does not empower the administrator *c.t.a.* to maintain the action, since he is not a trustee of an express trust nor a person expressly authorized by statute to bring the action.

9.  **Same: Bills and Notes § 16—**
    While ordinarily only the personal representative of a deceased payee may maintain an action on a note maturing prior to the payee's death, this rule does not apply when the personal representative by valid sale or pledge or by distribution of the note to the legatee in accordance with the will, vests title to the note in the purchaser or legatee.

10. **Executors and Administrators § 9—**
    The will bequeathed the notes in question to testator's wife for life with remainder to testator's heirs. The widow as executrix settled the estate and took possession of the personalty under the will. Thereafter, she died and her husband's administrator *c.t.a.* brought this action against her administrators to recover the notes. *Held:* In the absence of a showing by plaintiff that the notes were not endorsed or assigned to the life tenant or that distribution of the estate did not pass title to the notes out of the husband's personal representative, the administrator *c.t.a.* has failed to show that he is the real party in interest to sue on the notes, and nonsuit should have been entered.

APPEAL by the defendants, administrators of the estate of Ruby Darden, deceased, from *Morris, J.,* April Term 1957 of SAMPSON.

From a judgment entered upon a verdict in favor of the plaintiff, the defendants appeal.

*Butler & Butler for Plaintiff, Appellee.*
*J. Faison Thomson & Son and Britt & Warren for Defendants, Appellants.*

PARKER, J. J. C. Darden and Annie Ruby Darden were husband and wife. No child was born of their marriage. J. C. Darden died on 3 January 1953. After his death his will was duly probated, and is of record in Will Book 11, p. 503 *et seq.,* in the

Office of the Clerk of the Superior Court of Sampson County. He appointed his wife as sole executrix of his will.

The relevant items of his will are:

> "ITEM 1. I give, devise, and bequeath unto my beloved wife, Annie Ruby Darden, for and during her natural life, all my property, real and personal, of every nature and kind, and wheresoever located, which I may have and own at the time of my death, after first paying therefrom my funeral expenses and any just debts that I may then owe, to have and use in any way or manner she may see fit, and with full power to dispose of the same by deed or will in fee simple.
>
> "ITEM 2. At the time of the death of my said wife, if there shall be any of said property, real or personal, left undisposed of by my said wife during her lifetime, the same shall, after payment of her funeral expenses in case her own estate is insufficient to pay the same, be divided among my then heirs at law, *per stirpes* and not *per capita.*"

On 14 January 1953 letters testamentary were duly issued by the court to his wife as executrix of his estate. She entered upon the administration of his estate, and administered it according to the will. On 6 January 1954 she filed an inventory with the court setting forth all property received by her as executrix of his estate, which is as follows: $7,005.78 money deposited in two banks, $1,300.00 in U. S. Postal Savings, $28.05 from the Flue Cured Stabilization Corporation, and hogs, mules and farming equipment valued at $1,117.21, a note of Isabella Stevens for $898.17, and a note of Stephen Bass for $634.61, making a total of $10,983.82.

On 25 March 1954 the executrix filed her final account with the court, and requested the court to accept it as such, and to discharge her bond from any future liability. In this final account she showed receipts of $8,646.04, itemized as follows: money received from two banks $7,005.78, U. S. Postal Savings $1,300.00, money received from the sale of hogs $312.21, money received from tobacco $28.05. She showed disbursements in the amount of $1,527.72, consisting of funeral expenses, taxes and cost of administration. Her final account showed cash in the sum of $7,118.32, which she paid to herself under her husband's will. The Record does not show whether the court accepted her final account or not, and discharged her bond. However, the plaintiff in paragraph 4 of his complaint alleges that she administered her husband's estate pursuant to his will, and the answer admits such allegation to be true. The plaintiff further alleges in his complaint that after the payment of funeral expenses, and all debts of the deceased, and the costs of admin-

DARDEN v. BOYETTE.

istration, a net balance of cash belonging to the estate of J. C. Darden in the sum of $7,118.32 was received by Annie Ruby Darden under her husband's will.

Annie Ruby Darden died intestate on 17 July 1954. The defendants were duly appointed by the court administrators of her estate. The plaintiff offered in evidence an Inventory and Report of Sale of the estate of Annie Ruby Darden, made by her administrators to the court, which tend to show that Annie Ruby Darden at the time of her death had in her possession, and undisposed of, the following property she took under her husband's will: the Isabella Stevens note, the Stephen Bass note, farming utensils, which her administrator sold for $1,621.17, and money. This inventory showed the administrators of her estate received personal assets of $42,478.36.

The heirs of J. C. Darden at the death of his wife were his five brothers, his four sisters, and the six children of a deceased brother. The uncontradicted evidence shows that Annie Ruby Darden's own estate was sufficient to pay her funeral expenses.

The plaintiff alleges in his complaint that as administrator of the estate of J. C. Darden, he is the owner, and entitled to the immediate possession, of the sum of $7,118.32, which Annie Ruby Darden received from her husband's estate by his will, of $1,621.17 representing the price received by her administrators at the sale of the farming utensils she received from her husband's estate by his will, and of the Isabella Stevens and the Stephen Bass notes she received from her husband's estate by his will. That Annie Ruby Darden took only a life estate by her husband's will, and that upon her death his property is to be divided among J. C. Darden's then heirs at law *per stirpes*. Wherefore, the plaintiff prays that he be adjudged the owner, and entitled to the immediate possession of this property.

The following issues were submitted to the jury, and answered as appears:

"1. Is the plaintiff the owner and entitled to the possession of the money, notes and tangible personal properties described in the complaint received by defendants' intestate, Annie Ruby Darden, from the Estate of J. C. Darden? Answer: YES.

"2. What was the amount of cash received by the defendants' intestate, Annie Ruby Darden, from the Estate of J. C. Darden? Answer: $7,118.32.

"3. What was the value on 17 July, 1954, of the tangible personal property received by defendants' intestate, Annie

Ruby Darden, from the Estate of J. C. Darden? Answer: $1,621.17."

Judgment was entered that plaintiff as administrator *c. t. a.* of the estate of J. C. Darden, deceased, is the owner of and entitled to the immediate possession of the Isabella Stevens and Stephen Bass notes, and shall recover from the defendants $7,118.32, with interest, and $1,621.17 with interest.

The defendants offered no evidence. They alleged in their answer as a defense that J. C. Darden had received money and property of his wife, which he deposited and invested in his name, and that at his death he was holding this property as trustee for her.

Defendants assign as error the denial of their motion for judgment of nonsuit. The defendants contend that the uncontradicted evidence clearly shows that the plaintiff, administrator c. t. a. of the estate of J. C. Darden, deceased, has no right, title or interest in the action, and therefore should be nonsuited. If such contention is correct, it was error not to nonsuit the plaintiff. *Chapman v. McLawhorn*, 150 N.C. 166, 63 S.E. 721; *Vaughan v. Davenport*, 157 N.C. 156, 72 S.E. 842; *Casualty Co. v. Green*, 200 N.C. 535, 157 S.E. 797; *Hunt v. State*, 201 N.C. 37, 158 S.E. 703; *McCarley v. Council*, 205 N.C. 370, 171 S.E. 323.

Our North Carolina cases hold, and the great majority of the cases from other jurisdictions are in accord, that where an estate for life, with remainder over, is given by will, with a power of disposition in fee of the annexed remainder, the limitation for the life of the first taker will control, and the life estate will not be enlarged to a fee. *Voncannon v. Hudson Belk Co.*, 236 N.C. 709, 73 S.E. 2d 875; *Hardee v. Rivers*, 228 N.C. 66, 44 S.E. 2d 476; *Alexander v. Alexander*, 210 N.C. 281, 186 S.E. 319; *Helms v. Collins*, 200 N.C. 89, 156 S.E. 152; *Carroll v. Herring*, 180 N.C. 369, 104 S.E. 892; *Chewning v. Mason*, 158 N.C. 578, 74 S.E. 357; *Patrick v. Morehead*, 85 N.C. 62; *Troy v. Troy*, 60 N.C. 624; Anno. 36 A.L.R. p. 1180 *et seq.*, where the cases are cited from 24 states, from England and from Canada; 33 Am. Jur., Life Estates, Remainders, etc., sec. 21.

A life estate devised in clear and express words to testator's wife is not enlarged to a fee by power given to the life tenant to use the life estate in any way or manner she may see fit, where a remainder over is given by express words in the will of any of his property left undisposed of by his wife during her life, at her death, to his then heirs at law. *Chestnut v. Chestnut*, 300 Pa. 146, 151 A. 339, 75 A.L.R. 66; *Peckham v. Lego*, 57 Conn.

553, 19 A. 392, 7 L.R.A. 419, 14 Am. St. Rep. 130; Note 7 L.R.A. 419; 33 Am. Jur., Life Estates, Remainders, etc., sec. 27.

In *Jones v. Fullbright,* 197 N.C. 274, 148 S.E. 229, there was a bequest to the wife by the husband in his will of all his personal property during her life to be used and disposed of by her as she saw fit during life, and the proceeds not disposed of by her before death, shall be collected and sold for cash by a commissioner appointed by the Superior Court of Henderson County, who shall pay the balance, after payment of necessary expenses, one-half to the heirs of his wife and one-half to the heirs of his dead sisters. It was held that the wife took a life estate, and had no power to dispose of any of the property by will.

In *Williard v. Weavil,* 222 N.C. 492, 23 S.E. 2d 890, it was held that a life estate with remainder over to designated persons can be created by will in money.

Annie Ruby Darden was given a life estate by her husband's will in all his property. She died intestate. Her own estate was more than sufficient to pay her funeral expenses. Any of her husband's estate left by her undisposed of during her life-time, at her death, vested by the terms of his will in his then heirs at law, to be divided among them *per stirpes. Voncannon v. Hudson-Belk Co., supra,* p. 712, in our Reports and p. 878 in the S.E. Reporter.

When a person dies, his personal property vests upon his death in his executor or administrator, and his real property vests in his devisees, or descends to his heirs. *Moore v. Jones,* 226 N.C. 149, 36 S.E. 2d 920; *Linker v. Linker,* 213 N.C. 351, 196 S.E. 329.

In 21 Am. Jur., Executors and Administrators, sec. 282, it is written: "According to the common law rule as now recognized and followed in most jurisdictions of the United States, the personal property of a decedent vests upon his death in his executor or administrator for the purpose of administration, and for this purpose only."

In *Michigan Trust Co. v. Grand Rapids,* 262 Mich. 547, 247 N.W. 744, 89 A.L.R. 840, the Court said: "The title of an administrator or executor of a decedent to the personal property of deceased is so vested for the purposes of administration, at the conclusion of which the balance remaining will be distributed."

G.S. 28-162 provides that upon the payment of the decedent's debts, of the costs of administration, and charges against the estate, the balance remaining in the hands of an executor or administrator shall be delivered and paid to the persons, or person, to whom the same may be due by law or the will.

DARDEN v. BOYETTE.

The allegations of plaintiff's complaint, together with the admissions in the answer, and the uncontradicted evidence show that Annie Ruby Darden, executrix of the estate of her deceased husband, paid his funeral expenses, all the debts of his estate, ended its administration, and distributed the balance of the personal property of the estate to herself, as she was given a life estate under the will. The will clearly shows that the testator intended to confide the possession of such balance of the personal property of his estate to his widow during her life. Under the uncontradicted facts here, the executrix had a legal right to terminate the administration of the estate on 25 March 1954, without waiting for the expiration of two years from her qualification as executrix. G.S. 28-162; *Turnage v. Turnage*, 42 N.C. 127; *Snow v. Boylston*, 185 N.C. 321, 117 S.E. 14; McIntosh, N.C. Practice and Procedure, 2d Ed., Vol 2, p. 474.

In the present case the will provides only for the payment of funeral expenses and debts before the widow is entitled to receive all the remaining personal property for life. No trust estate was created by the will, and the will imposed no duty upon anyone to be performed as to the remainder upon the termination of the life estate. The will created no express or implied trust in the plaintiff as administrator c.t.a., or anyone, to collect and sell the remainder, as did the will in *Jones v. Fullbright, supra,* or to manage the remainder for testator's three blind children, as did the will in *Smathers v. Moody,* 112 N.C. 791, 17 S.E. 532, or to do anything or to perform any duty in respect to the remainder when the life estate terminated. When the executrix closed the administration of the estate, and distributed the balance of the personal property of the estate to herself as life tenant, it inured to the benefit of the remaindermen, and such personal property ceased to be either property of the estate of her husband, or subject to any further administration as a part of that estate. *In re Sexton's Estate,* 163 Ohio Supreme Court 124, 126 N.E. 2d 129, *certiorari* denied 350 U.S. 838, 100 L. Ed. 747; *Downey v. Kearney,* 81 W.Va. 422, 94 S.E. 509; *Crean v. McMahon,* 106 Md. 507, 68 A. 265, 14 L.R.A. (N.S.) 798; *Weeks v. Jewett,* 45 N.H. 540; *Miller v. Miller,* 232 Ill. Appellate Court Reports 86; *Hunter, Ex'r. v. Green,* 22 Ala. 329; *Bates, Adm'r. v. Woolfolk,* 5 Ga. 329; *McGlawn v. Lowe,* 74 Ga. 34; *Andrews v. Brumfield,* 32 Miss. 107; Woerner's American Law of Administration, 3rd Ed., sec. 456. See also: *Fisk v. Norvel,* 9 Tex. 13, 2 Am. Dec. 58.

In the elaborate note attached to *Crean v. McMahon* in 14 L.R.A. (N.S.) 798, in which many cases are cited, it is written: "The courts passing upon the question are in accord in holding,

as does *Crean v. McMahon,* that the distribution or delivery of property to a legatee or devisee who has a life estate therein inures to the benefit of the remainderman; and upon the termination of the life estate, the title and right of possession vest absolutely in the remainderman without any action on the part of the executor or administrator." The note concludes: "It is, of course, self-evident that if, by the terms of the will, a trust estate is created, or some duty is devolved upon the executor to be performed after the termination of the life estate, the doctrine herein considered would not apply."

In 21 Am. Jur., Executors and Administrators, page 628, it is said: "It is generally held that an assent to the interest of the tenant for life in a chattel will inure to vest the interest of the remainder, since both constitute only one estate." And in *Crean v. McMahon,* it is said: "It would be strange, indeed, if the intervention of an administrator d.b.n. were required to pass a title to a legatee in remainder where the possession had been given up by the executor himself to the legatee for life, when the executor himself, if still living, could not maintain ejectment, because he had given possession to the legatee for life."

In *Downey v. Kearney, supra,* the Court said: "Counsel for plaintiff insists that the administration could not have been completed until the death of the life tenant and possession of the property delivered to the remaindermen. No authority is cited to sustain this proposition, and we have been unable to find any, except in cases where the will expressly or impliedly creates a trust in the executor which continues during the life estate. In the present case the will provides only for the payment of funeral expenses and debts, before the widow is entitled to receive all the remaining property to hold for life. . . . In such case there can be no implied trust in the executors to make distribution among the remaindermen. The office of the executors was ended and the administration of the estate completed, when they paid the debts and turned the remaining property over to the life tenant. . . . That completed the administration and terminated their executorship, for delivery to the life tenant passed all title and control of the assets from them." Cases are cited from New Hampshire, Alabama, Georgia, Mississippi, Pennsylvania, Maryland, Massachusetts and England to support the statement of the Court.

In *McKoy v. Guirkin,* 102 N.C. 21, 8 S.E. 776, the Court said: "It has been settled by repeated adjudications in this Court, supported by strong reasoning, that when an executor assents to a legacy given for life with remainder over, the assent ex-

tends also to such remainder, and his control over it ceases, and having nothing further to do he becomes so far *functus officio,* and the successive legatees must adjust their respective claims among themselves. Numerous cases are cited. If, however, the specific thing bequeathed for life, with a remainder, which in terms requires the restoration of the property to the executor to enable him to execute the trusts attached to the ulterior disposition, the executor may sue and recover, the assent in such case being limited to the vesting of the life estate only."

In *Weeks v. Jewett, supra,* the Court held as correctly stated in the second headnote:

"Where an executor had delivered over to the tenant for life the personal property given by the will, and such tenant had received and retained it until her death, it was held that the executor could not, as such, maintain a suit against a third person to recover it, as his duty must, in the absence of any provisions in the will to the contrary, be regarded as discharged by the delivery to the legatee."

*Miller v. Miller, supra,* is a case strikingly similar to the present case. The testator, Samuel S. Miller, devised and bequeathed all his property, real and personal, after the payment of his debts, to his wife, Mary C. Miller, for life, with power of sale over the personalty and to re-invest the proceeds. The will further provided that upon the death of his widow all the property constituting the life estate, together with all additions and increases thereto, is given, devised and bequeathed to his children, share alike. The executors of the will filed in court their final report showing all debts paid, including their commissions, and the balance of the personalty turned over to the widow. There appeared to be no final order discharging the executors. After having administered upon the personal estate and having disposed of the same as the will directed, the will imposed no other duties on the executors. The widow died testate, and her son qualified as executor of her estate. The executors of the estate of Samuel S. Miller filed their petition for citation in the county court against the executor of the estate of Mary C. Miller to procure possession of the personal estate in which Mary C. Miller had a life estate by her husband's will, claiming all such personal property after her death belonged to them as executors of the estate of Samuel S. Miller. The Court held that the distribution of the personal property of the estate of Samuel S. Miller by his executors to his wife under his will, which gave her a life estate, was a distribution to the remainderman, which exhausted the powers of the execu-

tors over such personalty, no further specific or implied powers in the executors of the estate of Samuel S. Miller or the life tenant being contained in the will. The Court further held that the executors of the estate of Samuel S. Miller had no right, title or claim as executors to the property in question, and ordered the petition dismissed and the writ of citation quashed.

G.S. 1-57 provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided. Counsel for plaintiff contends that G.S. 1-63 is an exception to G.S. 1-57, and that by virtue of G.S. 1-63 plaintiff can maintain this action. That statute reads: "An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section, includes a person with whom, or in whose name, a contract is made for the benefit of another."

Plaintiff is not a trustee of an express trust, and is not a person expressly authorized by statute to bring this action. When the executrix here distributed the balance of the personal property of the estate to herself, pursuant to the terms of the will, (this the complaint alleges and the answer admits, and such allegations in the pleadings would seem to imply that the executrix of the estate properly endorsed the Bass and Stevens notes to herself as life tenant), which gave her a life estate with a remainder over in such property, such property ceased to be a part of the estate, and was not subject to any further administration as part of that estate, because by the terms of the will no trust estate was created, and no duty was imposed upon anyone to be performed after the termination of the life estate. By such distribution the executrix became *functus officio* as to such property, since she had nothing further to do with such property as executrix. G.S. 28-24 provides that an administrator c.t.a. must observe and perform the will, and that he "has all the rights and powers, and is subject to the same duties, as if he had been named executor in the will." Manifestly an administrator c.t.a. has no greater rights and powers, and is not subject to greater duties, than the executor named in the will. Since the executrix named in the will became by the distribution of such personal property, pursuant to the terms of the will, *functus officio* as to such property, necessarily the administrator c.t.a. appointed by the court after the death of the executrix is also *functus officio* as to such property. This being true, we conclude that G.S. 1-63 does not empower the plaintiff as administrator c.t.a. to maintain this action to recover such personal

property, which was no longer a part of the estate, and not subject to further administration.

Counsel for plaintiff further contends that an action for the collection of the Bass and Stevens notes must be brought by plaintiff as administrator c.t.a., and quotes to support his contention this statement from *Cannon v. Cannon,* 228 N.C. 211, 45 S.E. 2d 34: "However, there seems to be no exception to the rule, that where a note was made payable to the decedent and matured before his death, as in the instant case, an action for the collection of such note must be instituted by the representative of the estate in his or her representative capacity."

In *Hayes v. Green,* 187 N.C. 776, 123 S.E. 7, the plaintiff sued the defendant to recover on six negotiable promissory notes, which defendant executed and delivered to H. A. Feimster. The notes were made payable to H. A. Feimster or order. Plaintiff alleged that these notes were delivered and transferred to him by H. A. Feimster, or his agent, for full value and before maturity, but none of the notes bear any endorsement of the payee. H. A. Feimster is dead, and his administrator, J. A. Harper, intervened in the action. The notes, and the mortgages securing them were offered in evidence by the administrator. The Court said: "They (the notes) were made payable to his intestate and were not endorsed or assigned by any one. The legal title, therefore, was in the intervenor, J. A. Harper, administrator." The Court held that the administrator was the owner of the notes and mortgage, and entitled to collect them.

We have held in a long line of decisions that an executor or administrator, having the legal title to the personal property of a decedent's estate for the purpose of administration, may sell or pledge promissory notes of the estate, if the exigencies of the estate make it advisable to do so, and that the parties dealing with the executor or administrator will get a good title, provided the transaction is fair and honest. *Felton v. Felton,* 213 N.C. 194, 195 S.E. 533, where the cases are assembled.

In Woerner's American Law of Administration, 3rd Ed. p. 1913, it is written: "Notes, bonds or other causes of action distributed in kind may be recovered upon by the distributees in their own names, since the order of distribution vests the title in them and out of the representative."

There is no allegation in the complaint, and no evidence in the record, that when the Stevens and Bass promissory notes were distributed by the executrix, they were not endorsed or not assigned to the life tenant, or that such distribution did not

pass title to these notes out of the representative. The record states the Bass notes were payable to the order of Clyde Darden. The record does not state to whom the Stevens notes were payable. Plaintiff's brief alleges these notes were payable to the order of plaintiff's testator. Apparently there were four Bass notes and five Stevens notes, though the executrix's inventory speaks of the Bass note and the Stevens note. Clyde Darden was the same person as J. C. Darden. It is true that we have held in *Jackson v. Love,* 82 N.C. 405, that the possession of an unendorsed negotiable note or bond, not payable to bearer, raises a presumption that the person producing it on the trial is the real and rightful owner. But here the plaintiff is not in possession of these notes, and there is no allegation in the complaint, and no evidence they are unendorsed. What is quoted above from *Cannon v. Cannon* does not apply when the representative of the estate in the settlement of the estate by the distribution of a note to a legatee has vested title in the legatee and out of the representative. The plaintiff as administrator c.t.a. has not shown that he is the real party in interest to sue on these notes, or that he has any right, title or interest in them, and this he must show to maintain his action.

The plaintiff as administrator c.t.a. of the estate of J. C. Darden, deceased, has no right, title or interest in or to the personal property he seeks to recover in this action, no duty devolves upon him by the will of his testator as to such personal property, no trust estate express or implied is created by the will in such property, and the trial court erred in overruling the motion for nonsuit made by the defendants.

Reversed.