## McMILLAN *v.* COX.

1. When by the terms of a will real and personal property is given to the wife for life with remainder to the children of the testator, a power conferred on the executrix, who was the wife of the testator, to sell any or all of the property devised and reinvest the proceeds, expressed in language which plainly and unequivocally limits the purpose for which any sale can be made to that of reinvestment only, does not, notwithstanding the will may contain  broad  and  liberal provisions as to the manner in which this power may be exercised, empower the executrix to mortgage the  property devised, nor to  convey  the title of such property as security for a debt created by her.
2. When, after expressly conferring such a power, the will also declares that "no part of the corpus of said estate is to be spent unless in the judgment of my  said wife the  same shall be necessary for the proper maintenance and education of my minor children," nothing more than an implied authority to use a portion of the corpus, if necessary for the maintenance and  education of the testator's minor children, is given.   The language quoted can not be construed so as to confer upon the executrix authority to borrow money for any purpose.
3. The court erred in holding that the will authorized the executrix to borrow money and secure the same by a mortgage on property of the estate, and in appointing a receiver, and granting the injunction.

Argued May 27,—Decided November 2, 1899.

Injunction and receiver.   Before Judge Lumpkin.   Fulton superior court.   April 15, 1899.

*Dorsey, Brewster & Howell* and *Arnold & Arnold*, for plaintiff in error. *Abbott, Cox & Abbott*, contra.

LITTLE, J.    Mrs. Cox filed an equitable petition in which she made the following case : McMillan died testate in Fulton county, and the first item of his will, which was duly probated, is as follows: "I give and bequeath all of the property of every kind whatsoever, both real and personal, that I may own or to which I may be entitled at the time of my death, including all land, movable property, money, notes or other choses in action, rights or credits of whatever character or description, and no matter where or in what shape the same may be, to my beloved wife Janie H. McMillan during her life, and at her death to be divided equally among my children, to wit: Lula, Harry, William, John, Archie, Jennie, Nannie, Robert, and an infant daughter now three months old, with full power in my said wife without any order of court to sell and convey in her discretion any or all of said property upon such terms as to her may seem proper, and reinvest the proceeds, subject to the same limitations, the purchaser from her receiving the fee-simple title unincumbered by any remainder interest, and her said power to sell and reinvest continuing and running through all subsequent investments made by her, the remainder interest of my said children attaching to all property purchased by her and lost upon all sold by her.    This wide discretion is vested in my wife with the belief that she will use it for the best interest of herself and my children, so that my said estate shall be taken care of and kept together while my wife lives, and then be divided among my children.    No part of the corpus of said estate is to be spent, unless in the judgment of my said wife the same shall be necessary for the proper maintenance and education of my children."    Janie H. McMillan was appointed executrix of the will and guardian of the minor children.    Testator died in October, 1882.    At the time of his death, McMillan was possessed of a large and varied estate, consisting of merchandise, book accounts, and the undivided one-half interest in the notes and accounts of the firm of McMillan & Snow, and also an undivided one-half interest in lot number twenty-five (25) on Marietta street in the City of Atlanta,

Georgia, together with other lands; also money and solvent debts. In 1892 the executrix induced petitioner to loan her the sum of six thousand dollars, for which she gave a promissory note signed "Janie H. McMillan, executrix of J. C. McMillan," becoming due March 1, 1897, and also executed and delivered certain interest notes for two hundred and forty dollars each. For the purpose of securing said loan, Janie McMillan, individually and as executrix of the will of her testator, made and delivered to petitioner her deed conveying an undivided one-half interest in lot number 25 on Marietta street in the City of Atlanta, on which was situated a storehouse. The petition alleges, that the loan obtained from petitioner was for the purpose of improving the estate left by the testator, by erecting buildings and making other improvements rendering the estate productive; that the principal borrowed, six thousand dollars, is now due, together with interest on the same according to the contract. The defendant now sets up that she had no power, as executrix, to bind the estate of her testator for the payment of the sum borrowed, nor to convey title to the land as security, and she therefore refuses to pay the same. By proper conveyances from certain of the remaindermen, Janie H. McMillan individually has now a one-third interest in the land conveyed, in fee simple. She is insolvent, is in possession of the property and receiving the rents. Her individual interest therein is not sufficient to pay petitioner the amount which is due. She has not paid the taxes on the property, but has wasted and squandered the income. The plaintiff prays for a receiver to take charge of the property conveyed, and to collect the rents; that the defendant be enjoined from interfering with such property; that the interest in the property belonging to Janie McMillan individually be sold and the proceeds applied to the payment of the indebtedness; that two thirds of an undivided one-half in the land conveyed be decreed to be bound for the payment of such balance as may be due petitioner after the sale of the individual interest of said Janie McMillan. There was also a prayer for general relief.

The defendant answered, and denied that she had any power to bind the estate by contracts for improving the same. She

admits that the loan was made to her individually, but denies that the estate is bound; admits the execution of the deed, and avers that the money was borrowed for her own purposes, and was used in operating a store, and was of no benefit to the estate.　She denies that she has any life-estate which can be disposed of, her only interest being as trustee for her children during her life, and alleges that the income during her life belongs to the children.　The deed from McMillan to Mrs. Cox was executed on March 1, 1892.　It purports to convey the undivided one-half interest in the lot on Marietta street, and recites that it is made under section 1969 of the Code of Georgia, for the purpose of securing a loan of six thousand dollars, which is obtained for the purpose of improving the estate left by J. C. McMillan under his will, by building and other improvements, rendering said property productive, and obviating the necessity of sale and reinvestment for such purpose.　On the hearing, this deed was put in evidence; also the promissory notes, and the will of McMillan.　It was also shown that Mrs. McMillan had neglected to pay the premiums for insurance on the property; that the State and county taxes for a number of years were not paid by the executrix, but were transferred to different parties, and are still outstanding.　It was agreed that Mrs. McMillan was insolvent, and that three of the children, remaindermen under the will, are yet minors. The presiding judge appointed a receiver for a one-half undivided interest in the land, and the receiver was directed to collect the rents and hold the property for the further order of the court.　An injunction was also granted; and to these rulings of the trial judge the plaintiff in error excepted.

1. The question made and passed upon by the judge in the court below was, whether the power conferred on Mrs. McMillan by the will of her husband authorized her to borrow money for the purpose of improving the estate left by the testator in his will, by building and making other improvements, rendering said property productive and obviating the necessity of sale and reinvestment for such purpose.　The judge of the superior court held that the powers conferred did so authorize the executrix, and under that construction he appointed a receiver for

the entire interest in the property purporting to be conveyed by the deed. One of the prayers of the original petition was that the interest belonging to Janie H. McMillan individually should be .sold and the proceeds applied· to the payment of the indebtedness due the petitioner. Inasmuch as the separate question as to what interest Janie McMillan individually owned in the property, and whether it, under the terms of the will, passed by her deed, was not considered and passed upon by the trial judge, we confine ourselves to the consideration of the construction of the will to ascertain whether the executrix had the power to convey the interest for the purposes expressed in the deed. If she did, then the ruling made below and the appointment of the receiver was proper. If she did not have such power, then the court committed error in appointing the receiver and granting the injunction.

It is said that the power given to the executrix is very broad, and that the language shows that the testator intended to trust very much to her discretion. This is undoubtedly true, but, as we read the first item of the will, while the discretion given the executrix is very broad, its exercise is limited to a narrow field. Undoubtedly by the terms of the will the wife took a life-estate in all of the property of the testator, and the children took as remaindermen. To arrive at the intention of the testator, it is necessary that the whole will shall be construed together. We find that the testator, after the devise to his wife and children and after conferring the powers named on the executrix, declares, "No part of the corpus of said estate is to be spent unless in the judgment of my said wife the same shall be necessary for the proper maintenance and education of my minor children." Here is a declaration that but one contingency shall authorize the diminution of the corpus of the estate, that is, when it becomes necessary to properly maintain and educate the minor children. True, the judgment of the executrix must determine when such maintenance and education require the use of a part of the corpus, but that judgment can not be exercised in conveying away any part of the estate except for maintenance and education of the children. When properly construed, we think, there is no other clause

of the will which gives the wife any power to diminish the corpus of the estate.    She is invested with full power, and in her discretion without any order of court, to sell and convey any or all of the property on such terms as she may see proper, and reinvest the proceeds.    If the power is exercised according to the evident intention of the will, then the discretion vested in the executrix only enables her to exchange property of the estate for other property to belong to the estate, because, immediately following the provision granting power to sell and convey and reinvest the proceeds, the will in terms requires that the property in which the proceeds are invested shall be subject to the same limitations which qualified the devises to the wife and children.    It is said, however, that in the exercise of this power of sale and reinvestment the grantee in a conveyance from her would not be bound to see to the actual investment.    This is undoubtedly true, because the power to invest was entrusted to her discretion, with which the grantee has nothing to do; besides, the will provides that the purchaser who receives from her a fee-simple title takes it unincumbered.    But it is nevertheless true that the power of sale is by this portion of the will confined to the purposes of reinvestment.    We do not undertake to say, if she had conveyed any portion of this property for the declared purpose of reinvestment, that title would not have passed, notwithstanding the reinvestment never was made.    But how can the petitioner take any benefit from the power given to sell for the purpose of reinvestment?    It is not claimed at all that the defendant in error purchased the property attempted to be conveyed. The purpose specified in the deed which she received was not a sale for the purpose of reinvestment, but a loan of money to be used for building upon the land and otherwise improving the property.    Therefore, without regard to the question as to whether the money borrowed was devoted to building and making other improvements of the property, it does not seem to have been authorized under a power which limited the right to sell and convey to a purpose of investing the proceeds, after such sale, in property which should belong to the estate.

But it is claimed that a power to sell and convey carries

with it the right to create a mortgage. In his learned and able opinion the judge who presided on the hearing in this case says that he "does not find it necessary to hold that as a rule a simple power to sell, in a deed or will, without more, necessarily includes a power to mortgage." Much might be said to the contrary. In the case of *Adams* v. *Rome*, 59 *Ga*. 769, Judge Bleckley uses this language: "If the power to sell and convey stood alone, it would *probably* comprehend the power to mortgage"; citing 2 *Kelly*, 404; 3 P.Wms. 9. Counsel for plaintiff in error has cited us to the cases of *Wayne* v. *Myddleton*, 2 *Ga*. 383, *Miller* v. *Redwine*, 75 *Ga*. 130, and *Henderson* v. *Williams*, 97 *Ga*. 709, to support the contention that the power to sell and convey in this case carries with it a right to create a mortgage on the property. It appeared in the case of *Wayne*, that certain slaves were given to a trustee for the use of the grantor's wife during her life, and after her death to her children. The cestui que trust, with the approbation of her trustee, purchased a tract of land, growing crop, stock, cattle, etc., and a payment was secured by a mortgage on the four slaves conveyed by the deed of trust, and also by a mortgage on the land. The crop, cattle, etc., and the services of hired slaves, were received by the cestui que trust. The mortgage was foreclosed, and the slaves sold. It was held that the cestui que trust was competent to make the contract. The deed authorized the cestui que trust, with the consent of her trustee, to sell and dispose of the trust estate whenever she should deem it proper to do so, and to reinvest the proceeds upon like trusts. It will be noted that the power given in this case was to sell and dispose of the trust estate at any time the cestui que trust thought proper to do so, and to reinvest. The facts of the case show that as consideration for the debt which she secured by mortgage she received other property, not, it is true as it turned out, of the full value of her note, but a very considerable amount. In the case of *Miller* v. *Redwine*, supra, the lease of a hotel, the furniture contained in it, and the live stock about it, were conveyed by will to a daughter-in-law and her children through the medium of a trustee, with the right in the trustee "to sell said property and reinvest the same for the benefit of his cestui que

trust at any time, without an order of court for that purpose."
It was held that the mortgage to Redwine was legal, it having
been made to raise money to carry on the hotel business, and
this decision was placed on the ground that the trustee is in-
vested with sufficient power to execute the trust, and in order
to determine the power, the court will look to the character of
the trust estate. In the case of *Henderson* v. *Williams*, the trus-
tee had power and authority to allow the corpus of the estate
to be used on the written consent of the cestui que trust, when
it became desirable to use any part of the corpus of the trust
estate for the improvement thereof or for the more comfortable
support of said cestui que trust. Under this power the trustee
procured supplies to enable him to make a crop, and with the
written consent of the cestui que trust made a deed to secure
the payment of the note so given. This was held to be a
proper exercise of the power.

Whether these cases rule the principle clearly and explic-
itly, that a power to sell includes the power to mortgage, is a
question we do not now have to decide. The decision in each
of them seems to be made upon the facts as shown, rather than
to settle the principle broadly; but they do not, in our opin-
ion, afford authority which will support the deed made by
Mrs. McMillan, under the powers and restrictions of the will.
Of this we are clear. If A. should give to B. a power of at-
torney to sell a piece of property, it could hardly be claimed
that B. under such power could execute a mortgage on the prop-
erty to secure a loan. We think that the true principle is, that
a power to sell and convey *may* include the power to mortgage,
but it does not necessarily do so; and whether such power is
or is not included depends upon the character of the estate,
the words granting the power, and the purposes for which the
debt was created. We are satisfied, however, that when by
the terms of a will the power of sale is given *only* for the pur-
pose of reinvestment, with a provision restricting the expend-
iture of the corpus of the estate to a single purpose, and the
further provision that the same uses and restrictions which at-
tached to the property devised should also attach to the prop-
erty purchased with the proceeds of property which should be

sold under the power given, no right or power is given to the executrix to create a mortgage on the property of the estate to secure a loan of money. The intention to grant that power is not consistent with the restricted power of sale given by the will and the expressed purpose of the testator to limit the expenditure of the corpus of this estate to one other purpose.

2. It may be further said that, as a general rule, an executor can not contract debts which will bind the estate he represents. *Palmer* v. *Moore,* 82 *Ga.* 177. In order to make such debts valid charges on the estate he represents, there must be express authority so to do; and if the executrix in this case had the right to borrow money and charge the estate she represented with its payment, she must have had express power to do so. The power given by the will is that which we first quoted, that no part of the corpus is to be spent unless in the judgment of the executrix it became necessary to do so for the maintenance and education of the children. Certainly it can not be claimed that power to borrow money was conferred by this clause of the will. It was but an effort on the part of the testator to prevent making his estate liable for any debt, and preventing any part of his property from being expended unless it became necessary for the maintenance and education of his children. There is no condition of the will which authorizes the executrix to spend any portion of the corpus of the estate, except when necessary for the maintenance and education of the children. The intention gathered from the entire will is, that his wife and children shall be supported from the rents and profits of the estate of which he was possessed; that inasmuch as it was probable that the estate would remain under the control of his executrix for a considerable length of time, and as some of his children were young and had to be reared and educated, if such rents and profits were not sufficient to maintain and educate the children, then he gave the power to his executrix to sell such a part of his estate as was necessary for this purpose. In the meantime, if it became desirable to sell any particular pieces of property, or all of it, and with the proceeds to procure other property, power was given to the executrix so to do, for the benefit of his devisees; but the testator nowhere in his

will used language which, fairly construed, showed that he intended to give his executrix power to borrow money or contract debts with the incident risk of dissipating an estate which he set aside for the support and maintenance of those whom he left dependent upon it.

*Judgment reversed.    All the Justices concurring.*